1

2

3

4

5

6

7

8                     UNITED STATES DISTRICT COURT

9                 FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   MARY LYNN GALLEGOS,                    Case No.  1:22-cv-01138-JLT-BAM

12                     Plaintiff,
                                            **FINDINGS AND RECOMMENDATIONS**
13         v.                               **REGARDING PLAINTIFF'S MOTION FOR**
                                            **SUMMARY JUDGMENT**
14   MARTIN O'MALLEY, Commissioner of
     Social Security,[1]                    (Docs. 17, 20.)
15
16                     Defendant.

17

18

19                          **<u>INTRODUCTION</u>**

20         Plaintiff Mary Lynn Gallegos ("Plaintiff") seeks judicial review of a final decision of the

21   Commissioner of Social Security ("Commissioner") denying her application for disability insurance

22   benefits under Title II and Title XVI of the Social Security Act.  The parties' briefing on the motion

23   was submitted, without oral argument, to Magistrate Judge Barbara A. McAuliffe.  (Docs. 17, 20.)

24         Having considered the parties' briefs, along with the entire record in this case, the Court finds

25   that the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence in the

26

27   [1] Martin O'Malley became the Commissioner of Social Security on December 20, 2023.  Pursuant to
     Rule 25(d) of the Federal Rules of Civil Procedure, Martin O'Malley is substituted for Kilolo Kijakazi
28   as Defendant in this suit.

                                            1

record and is based upon proper legal standards.  Accordingly, this Court will recommend affirming the agency's determination to deny benefits.

**FACTS AND PRIOR PROCEEDINGS**

Plaintiff applied for Title II and Title XVI disability insurance benefits on December 6, 2019. AR 210-216.[2]  Plaintiff's application was denied initially on March 2, 2020, and on reconsideration on September 15, 2020.  AR 113-121;127-139.  Plaintiff requested a hearing before an administrative law judge ("ALJ") and ALJ Rosanne Dummer held a hearing on May 19, 2021.  AR 35-56.  ALJ Dummer issued an order denying benefits on the basis that Plaintiff was not disabled on May 28, 2021.  AR 12-34.  Plaintiff sought review of the ALJ's decision, which the Appeals Council denied.  AR 1-6.  This appeal followed.

**May 19, 2021 Hearing Testimony**

ALJ Rosanne Dummer held a telephonic hearing on May 19, 2021.  AR 35-56.  Plaintiff appeared with her attorney, William Carr.  *Id.*  Sara Statz, an impartial vocational expert, also appeared and testified.  AR 49-55.  The ALJ began by admitting exhibits 1A to 8A, 1B to 16B, 1D to 6D, 1E to 13E, and 1 to 10F into evidence.  AR 39.

Upon examination by the ALJ, Plaintiff testified that she was 53, 5'7", and weighed approximately 178 pounds.  *Id.*  Plaintiff testified that she completed grade eleven, did not have a GED or driver's license, and went to appointments by bus.  *Id.*  Plaintiff said that she was not working at the time of the hearing and had not worked since 2013.  AR 40.  In her last position, she worked as a nursing assistant before she was laid off.  *Id.*  Plaintiff testified that her disability began on April 1, 2017, as pain from her spinal arthritis had worsened.  *Id.*  Plaintiff additionally noted that she also suffered from diabetes.  *Id.*

The ALJ then reviewed Plaintiff's work history, beginning with Plaintiff's nursing assistant position at Beverly Health.  *Id.*  She testified that in that position, she had to lift patients who weighed approximately eighty pounds.  AR 41.  In her position at James Cox mental health boarding care, she

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

worked in housekeeping and would do light housekeeping, cooking, laundry, and assisting clients with whatever they needed. *Id.* From 2010 to 2011, Plaintiff worked as a nursing assistant at Kern County's medical center. *Id.* In that position, Plaintiff also lifted approximately eighty pounds. AR 41-42. In 2012, Plaintiff worked for Lifehouse Bakersfield Operations Convalescent Care, and lifted approximately eighty pounds in that role. AR 42.

Plaintiff testified that she had not received restrictions or instructions that she should not work from doctors or medical personnel. *Id.* However, Plaintiff said that she could not work because the pain was so severe that she could barely move and could not focus or concentrate. *Id.* She felt the pain in her back, her spine, her hips, her shoulder, and sometimes in her knees. *Id.* Plaintiff testified that she was on medication, including pain medication Tramadol and a muscle relaxer. AR 42-43.

Plaintiff testified that she is right-handed and has lived alone in a one-floor apartment since 2016. AR 43. She had two adult children and one grandchild, who she saw once a year, as they lived out-of-state. *Id.* She stayed in contact with them via Facebook. *Id.* On a usual day, Plaintiff would get up at between 6:00 AM and 9:00 AM depending on her sleep pattern, would watch TV, and would do housework. AR 43-44. Doing housework would take her the full day because she would need to take breaks. AR 44. Plaintiff testified that her hobbies included music and singing by herself. *Id.* Plaintiff stated that she would not usually use the internet apart from using it to watch television. AR 44-45.

Plaintiff further testified that she had problems with her vision, including needing to wear glasses and having mild cataracts. AR 45. Plaintiff said that she smoked approximately "a pack and a half" a day, which her doctors have discussed with her. *Id.* Plaintiff typically went to bed between 10:00 PM and 1:00 AM. *Id.* Plaintiff testified that after dinner, she usually could not do much because she would get sick after she ate. AR 46. She again stated that she could not return to work because of the pain she was in, which prevented her from concentrating. *Id.* Plaintiff said that she stopped working from 2013 to 2015 due to "personal reasons" related to her "personal life." *Id.*

Under examination by Plaintiff's Counsel, Plaintiff testified that her pain prevented her from sitting too long, standing too long, or laying down. AR 47. She testified that when she slept, she would sometimes wake up after two hours. *Id.* Plaintiff testified that she could stand for

3

approximately five to ten minutes before needing to relieve the pain of standing by moving around, sitting down, or trying something else to relieve the pain.  AR 47-48.  She states that she could walk or sit approximately fifteen minutes before needing to stop, and then would need to rest for approximately five minutes before she could walk again.  AR 48.  Plaintiff further testified that after a rest break from sitting, she would continue washing dishes or work on another task before sitting down again.  *Id.*  Plaintiff testified that she could lift ten pounds and could "probably" lift twenty pounds, but would likely injure herself or cause herself pain in doing so.  AR 48-49.  Plaintiff also testified that she had problems with shortness of breath when walking, exercising, or being in hot environments.  AR 49.

Following Plaintiff's testimony, the ALJ elicited testimony from vocational expert ("VE") Sara Statz.  AR 49-56.  The VE testified that her resume correctly stated her professional qualifications and that she was familiar with Social Security's regulatory definitions of work by skill and exertional level.  AR 49-50.  Plaintiff's counsel stated that he did not have any objections to the VE's qualifications.  AR 50.  The VE first clarified with the ALJ that Plaintiff lifted approximately 80 pounds as a CNA.  *Id.*  The VE then clarified that Plaintiff lifted approximately 10 pounds at most in the housekeeping position.  *Id.*

The VE classified Plaintiff's past work as Nurse Assistant (DOT No. 355.674-014, SVP 4) with the strength "defined as medium though performed at heavy" and Cleaner Housekeeping (DOT No. 323.687-014, SVP 2) which was defined and performed as "light."  AR 51.  The ALJ then asked the VE hypothetical questions.  For the first hypothetical, the ALJ asked the VE to consider a hypothetical person who: could lift and carry about 50 pounds occasionally and 25 pounds frequently; could sit about six of eight hours; could stand and walk about six of eight hours; should not climb any ladders or scaffolds; should not work at any unprotected heights; should not carry around any dangerous moving machinery; could occasionally climb ramps and stairs; could balance, stoop, kneel, crouch, and crawl; and should avoid concentrated exposure to vibrations.  *Id.*  The VE testified that such an individual could return to the positions of the Nurse Assistant as generally performed and Cleaner Housekeeping both as defined and as performed.  AR 52.  The VE testified that there were approximately 362,382 jobs nationally for the Nurse Assistant position and 135,369 jobs nationally for

the Cleaner Housekeeping position.  AR 52-53.  The VE testified that the Cleaner Housekeeping position does not require work on ladders, on scaffolds, or at unprotected heights.  AR 53.

The ALJ then asked the VE to add the vocational factors of a person with Plaintiff's age, education, and past work history to the limitations.  *Id.*  The VE testified that there would still be other jobs existing in the national economy that such a person could perform, including Sweeper Cleaner Industrial (DOT No. 389.683-010, SVP 2, medium strength work) with 12,314 jobs; Dining Room Attendant (DOT No. 311.677-018, SVP 2, medium strength work) with 57,814 jobs; and Counter Supply Worker (DOT No. 319.687-010, SVP 2, medium strength work) with 117,456 jobs nationally. *Id.*  The ALJ then asked if there would be any light jobs for the hypothetical individual.  *Id.*  The VE testified that there would be the Cleaner Housekeeping position, Routing Clerk (DOT No. 222.687-022, SVP 2, light strength work) with 40,661 jobs; Marker (DOT No. 209.587-034, SVP 2, light strength work) with 283,214 jobs; and Sales Attendant (DOT No. 299.677-010, SVP 2, light strength work) with 213,182 jobs nationally.  *Id.*

The ALJ then asked whether the available jobs would be impacted if the individual was further limited to not working in excessively bright lighting, including bright sunlight or bright overhead lights, though still working in a well-lit environment.  AR 54.  The VE testified that the jobs described were indoor jobs and would not be impacted by excessive light or bright sunlight.  *Id.*  The ALJ then asked if there was a customary allowance for break periods in the workday, including for the jobs the VE mentioned.  *Id.*  The VE testified that the breaks were typically two 10-to-15-minute breaks, with one in the first part of the day and the second in the latter part of the day, as well as a 30-minute or 60-minute lunch break depending on the employers' policy.  *Id.*

The ALJ then asked whether Plaintiff's past work or the jobs mentioned could be performed if the individual could only work about a four-hour workday, might be off-task about 20 percent of the time, could require additional 10-to-15-minute breaks two to three times a day, and might miss work three to four days a month.  *Id.*  The VE testified that any of those limitations would preclude work. *Id.*

The VE then testified that her testimony was consistent with the Dictionary of Occupational Titles, though noted that the Dictionary of Occupational Titles and Selected Characteristics of

Occupations Defined in the Revised Dictionary of Occupational Titles do not address bright lighting, well-lit work environments, breaks, time off-task, additional break requirements, or absenteeism.  AR 54.  The VE testified that her testimony on those factors was based on her professional experience and research.  AR 55.  The VE then testified that the jobs described were considered common jobs that exist in several regions of the country.  *Id.*  Upon examination by Plaintiff's attorney, the VE stated that there were no transferability of skills to sedentary work.  *Id.*

**Medical Record**

The relevant medical record was reviewed by the Court and will be referenced below as necessary to this Court's decision.

**The ALJ's Decision**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff was not disabled under the Social Security Act.  AR 12-34.  Specifically, the ALJ found that Plaintiff had not engaged in substantial activity since the alleged onset date of April 1, 2017.  AR 17.  The ALJ identified the following severe impairments: type II diabetes (non-insulin dependent); degenerative disc disease thoracic spine; hypertension; and dyslipidemia.  *Id.*  The ALJ additionally evaluated and discussed other impairments that did not constitute severe medically determinable impairments, including Plaintiff's alleged vision deficits and chronic pulmonary disease. *Id.*  The ALJ noted that these impairments were "treatable nonsevere conditions."  *Id.*  The ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled any of the listed impairments.  AR 18-19.

Based on a review of the entire record, the ALJ found that Plaintiff retained the RFC to perform medium work with the limitations that Plaintiff could lift or carry fifty pounds occasionally and twenty-five pounds frequently; sit six of eight hours; stand or walk six of eight hours; should avoid work hazards (such as work on ladders or scaffolds, work around unprotected heights, or work around dangerous moving machinery); could occasionally climb ladders, ramps, or stairs; could occasionally balance, stoop, kneel, crouch, and crawl; and should avoid concentrated exposure to vibrations.  AR 19.  The ALJ considered "all symptoms and the extent to which these symptoms can

1  reasonably be accepted as consistent with the objective medical evidence and other evidence," as well

2  as "medical opinion(s) and prior administrative medical finding(s)."  AR 19-27.

3          Given this RFC, the ALJ found that Plaintiff was capable of performing past relevant work as a

4  nursing assistant and cleaner/housekeeping, as that work would not require the "performance of work-

5  related activities precluded" by her RFC.  AR 27.  The ALJ additionally made the alternative Step

6  Five finding that there were other jobs that existed in significant numbers in the national economy that

7  Plaintiff could also perform.  AR 27-29.  The ALJ noted that examples of jobs at the unskilled medium

8  work level consistent with Plaintiff's RFC included: (1) nursing assistant (DOT No. 355.674-014)

9  with 362,382 jobs; (2) sweeper, cleaner industrial (DOT No. 389.683- 010) with 12,314 jobs; and (3)

10  dining room attendant (DOT No. 311.677-018) with 57,814 jobs.  AR 28.  The ALJ further noted that

11  examples of jobs at the unskilled light work level included: (1) housekeeping cleaner (DOT No.

12  323.687-014) with 135,369 jobs; (2) routing clerk (DOT No. 222.687-022) with 40,661 jobs; (3)

13  marker (DOT No. 209.587-034) with 283,214 jobs; and (4) sales attendant (DOT No. 299.677-010)

14  with 213,182 jobs.  The ALJ also found that the VE's testimony was consistent with the Dictionary of

15  Occupational Titles, and the VE had based additional information such as bright lights, breaks, time

16  off-task, and absenteeism on the VE's education, training, and professional experience.  AR 29.  The

17  ALJ therefore concluded that Plaintiff had not been disabled from April 1, 2017 through the date of

18  the decision.  *Id.*

19          **Procedural History**

20          This appeal followed from the Appeals Council's denial of review of the ALJ's decision.  On

21  September 20, 2023, Plaintiff filed her Motion for Summary Judgment.  (Doc. 17 at 3-6.)  On

22  November 2, 2023, Defendant filed its Responsive Brief.  (Doc. 20.)  Plaintiff did not file a reply.  On

23  December 12, 2023, the Court issued its Findings and Recommendations on Plaintiff's Motion for

24  Summary Judgment.  (Doc. 21.)  On December 29, 2023, Plaintiff filed her Objections to the Findings

25  and Recommendations, noting that she remains in chronic pain caused by arthritis and that she is

26  unable to work due to that pain.  (Doc. 22.)  Plaintiff also stated that it is very difficult for her to go to

27  the store, and that when she returns from the store, she must lay down for the rest of the day.  (*Id.*)

28  Plaintiff further noted that she takes pain medication, receives injections, does physical therapy, and

1    uses a Zynex medical device but remains in pain.  (*Id.*)  Defendant subsequently filed its Response to

2    Plaintiff's Objections.  (Doc. 24.)

3        On January 5, 2024, Defendant filed a Notice of Errata noting that Defendant's Responsive

4    Brief had not been served upon Plaintiff.  (Doc. 24.)  In light of the notice, the Court vacated its

5    findings and recommendations, ordered Defendant to serve Plaintiff with its Responsive Brief and file

6    a proof of service with the Court, and allowed Plaintiff to file a reply brief within 21 days of service of

7    Defendant's Responsive Brief.  (Doc. 25 at 2.)  The Court cautioned that if Plaintiff failed to submit a

8    timely reply, the Court would deem the matter submitted on the previously filed papers.  (*Id.*)

9    Defendant filed a proof of service noting that Defendant's Responsive Brief and Notice of Errata were

10   served by UPS delivery upon Plaintiff at her residence on January 9, 2024.  (Doc. 26 at 2); (Doc. 26-1)

11   (Proof of Delivery noting delivery on "01/09/2024" and that the delivery service "Met Customer" to

12   leave the shipment with.)  Plaintiff did not file a timely optional reply brief.

13                                   **SCOPE OF REVIEW**

14       Congress has provided a limited scope of judicial review of the Commissioner's decision to

15   deny benefits under the Act.  In reviewing findings of fact with respect to such determinations, this

16   Court must determine whether the decision of the Commissioner is supported by substantial evidence.

17   42 U.S.C. § 405(g).  Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*,

18   402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v. Weinberger*, 514 F.2d 1112,

19   1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a reasonable mind might accept as

20   adequate to support a conclusion."  *Richardson*, 402 U.S. at 401.  The record as a whole must be

21   considered, weighing both the evidence that supports and the evidence that detracts from the

22   Commissioner's conclusion.  *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).  In weighing the

23   evidence and making findings, the Commissioner must apply the proper legal standards.  *E.g.,*

24   *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).  This Court must uphold the Commissioner's

25   determination that the claimant is not disabled if the Commissioner applied the proper legal standards,

26   and if the Commissioner's findings are supported by substantial evidence.  *See Sanchez v. Sec'y of*

27   *Health and Human Servs.*, 812 F.2d 509, 510 (9th Cir. 1987).

28       ///

# REVIEW

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 1382c(a)(3)(A).  A claimant must show that he or she has a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).  The burden is on the claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

# DISCUSSION[3]

Plaintiff, representing herself *pro se*, filed a Motion for Summary Judgment in which she states that she has been unable to work due to severe pain, arthritis in her back, poor vision, and diabetes. (Doc. 17 at 3.)  Plaintiff further includes three physician's reports along with her Motion for Summary Judgment.  (*Id.* at 4-6.)

Defendant construed Plaintiff's Motion for Summary Judgment as raising two issues: (1) whether the ALJ reasonably discounted Plaintiff's allegations of debilitating symptoms and limitations; and (2) whether the new evidence Plaintiff submitted from Nurse Taylor and Dr. Beare warrant a remand under sentence six of the Social Security Act.  (Doc. 20 at 7.)  Defendant contends that the ALJ reasonably discounted Plaintiff's subjective complaints and that the physician's reports submitted by Plaintiff do not provide a valid basis for reversal.  (*Id.* at 7-13.)

**A. Plaintiff's Subjective Complaints**

In her Motion for Summary Judgment, Plaintiff stated that she was "unable to work due to [her] severe to [chronic] pain," including arthritis in her back and other health problems including poor vision and diabetes. (Doc. 17 at 3.)  She noted that her pain disturbs her and she cannot pay attention,

---

[3] The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits.  Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

1    talk, write, sit, stand, walk, or sleep for long periods of time due to her pain.  (*Id.*)  She further noted

2    that she does not have a social life due to her pain, and her pain wakes her up every two hours even

3    with pain medication.  (*Id.*)  She wrote that her pain "isn't ever below at 5" on a scale of one to ten.

4    (*Id.*)  She further wrote that she did not see her "health improving in the future" and that her "health is

5    declining."  (*Id.*)

6         The Court construes Plaintiff's Motion as challenging whether the ALJ provided clear and

7    convincing reasons for rejecting Plaintiff's testimony as inconsistent with the evidence.

8         In deciding whether to admit a claimant's subjective complaints, the ALJ must engage in a

9    two-step analysis.  *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); *Batson v. Comm'r*, 359

10   F.3d 1190, 1196 (9th Cir. 2004).  First, the claimant must produce objective medical evidence of her

11   impairment that could reasonably be expected to produce some degree of the symptom or pain alleged.

12   *Garrison*, 759 F.3d at 1014.  If the claimant satisfies the first step and there is no evidence of

13   malingering, the ALJ may reject the claimant's testimony regarding the severity of her symptoms only

14   by offering specific, clear and convincing reasons for doing so.  *Id*. at 1015.

15        Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be

16   expected to cause the alleged symptoms.  AR 24.  However, the ALJ discounted Plaintiff's statements

17   concerning the intensity, persistence, and limiting effects of those symptoms, noting that the

18   statements were not consistent with medical evidence and other evidence in the record.  *Id*.  The ALJ

19   was therefore required to provide specific, clear and convincing reasons for discounting Plaintiff's

20   subjective complaints.

21        First, the ALJ found that Plaintiff's subjective symptoms were inconsistent with treatment

22   notes.  AR 24-25.  Although lack of supporting medical evidence cannot form the sole basis for

23   discounting testimony, it is a factor that the ALJ can consider.  *See Burch v. Barnhart*, 400 F.3d 676,

24   681 (9th Cir. 2005).  With respect to Plaintiff's diabetes, hyperlipidemia, and hypertension, the ALJ

25   noted that these impairments were well-controlled when Plaintiff took medication.  AR 24.  The ALJ

26   further noted that even after Plaintiff's noncompliance with treatment plans for hypertension and

27   hyperlipidemia, examinations did not reveal end organ damage or hypoglycemic or neurological

28   symptoms.  AR 24; 367 ("The claimant has a history of diabetes mellitus type 2 diagnosed in 2017…

1   She has no history of any ophthalmologic complications and no history of any coronary artery disease,

2   cerebrovascular artery disease or renal dysfunction.  She has no neuropathy and no history of diabetic

3   foot ulcers."); 370 ("The claimant has diabetes with no obvious end organ damage."); 374 (noting that

4   Plaintiff was not taking Lisinopril or Atorvastatin, but had mostly normal Systems findings); 381

5   (noting that Plaintiff was not taking full dose of Metformin, but otherwise had normal Systems

6   findings); 389 (noting medication adherence "most of the time" and that "sometimes she forgets to

7   take her medication," but had no hypoglycemic symptoms or neurological symptoms); 433 (noting

8   that Plaintiff self-discontinued Glipizide).  The ALJ also noted that a diabetic eye examination further

9   showed Plaintiff was negative for retinopathy, and that "no clinician expressed overt concern other

10  than the claimant was to comply with treatment, increase activity, and stop smoking."  AR 25; 447

11  (assessing diabetes mellitus type 2 without retinopathy).  The ALJ therefore appropriately discussed

12  how Plaintiff's diabetes, hyperlipidemia, hypertension, and vision symptoms were inconsistent with

13  the supporting medical evidence.

14          With respect to Plaintiff's back pain and degenerative disc disease, the ALJ found that the

15  objective record did not support the degree of functional limitations alleged.  AR 25.  The ALJ noted

16  that:

17              the first mention and treatment for back pain in the record, appears to be
18              over two years later in November 2019. At that time, the claimant had
                some upper back pain treated with ibuprofen (Ex. 4F/5, 6, 8). Over the
19              next year, November 2019 to November 2020, physical examinations
                periodically showed tenderness and diminished sensation in the
20              claimant's back (Ex. 5F, 9F). However, she derived benefit from
                physical therapy, had full strength in all extremities and consistently
21              ambulated with a normal gait (Ex. 2F/9, 5F, 8F/9, 10F). During pain
                management, the claimant declined injections and pain medication,
22              which is somewhat inconsistent with allegations of disabling back pain
                (Ex. 9F). The most recent evidence dated March 18, 2021, indicates that
23              Dr. Wahba, M.D., an Orthopedic Surgeon, stated that the claimant's
24              back pain impairment did not cause any focal deficits, significant lumbar
                radiculopathy, neurogenic claudication or myelopathy (Ex. 10F).
25

26  AR 25.  As the ALJ noted, the record shows that Plaintiff's medical evaluations from 2019 and 2020

27  showed some tenderness and back pain that was treated with Ibuprofen and physical therapy.  AR 355-

28

58 (October and November 2019 assessments noting Plaintiff had upper back tenderness, back pain, and degenerative disc disease, but would treat with "Ibuprofen as needed"); 367-73 (February 2020 evaluation report noting thoracic back pain that does not radiate and normal findings for gait and spinal/lumbar range of motion); 477-78 (November 2020 evaluation report noting normal gait and station and moderate tenderness in thoracic spine and referring Plaintiff to physical therapy as treatment for back pain). The record further showed that Plaintiff found "PT is helpful while she is there." AR 479. As a result of the February 2021 visit, Plaintiff was referred for further physical therapy for her back pain and was referred to an orthopedic surgeon for thoracic scoliosis and thoracic degenerative disc disease, though Plaintiff wanted "to avoid medications and procedures at this time." AR 479-80. The ALJ also noted that the record showed that Plaintiff benefitted from physical therapy, had full strength in her extremities, and had a normal gait. AR 311 (May 2019 clinic note noting that "even though she refused me to do physical, but I could definitely say that she has normal gait"); 367-371 (February 2020 evaluation report noting Plaintiff was able to walk, sit, and bend comfortably; had normal findings for extremities, gait; and diagnosing with thoracic back pain); 433 (August 2020 progress report noting normal musculoskeletal and gait findings); 483 (March 2021 clinic notes showing normal musculoskeletal findings with steady gait despite paraspinal tenderness). The ALJ further cited a March 2021 report in which an orthopedic surgeon found that Plaintiff had no focal deficits, no signs or symptoms of significant lumbar radiculopathy, neurogenic claudication, or myelopathy. AR 482-85. In short, the ALJ examined the record regarding Plaintiff's back pain and degenerative disc disease, and appropriately evaluated Plaintiff's symptoms in light of the objective supporting evidence. Accordingly, the ALJ appropriately discounted Plaintiff's subjective symptoms testimony based upon the lack of supporting medical evidence.

Second, the ALJ found that Plaintiff's subjective symptoms and difficulties were inconsistent with her relatively intact daily activities. AR 25. An ALJ may properly discount a claimant's subjective complaints when the daily activities demonstrate an inconsistency between what the claimant can do and the degree that disability is alleged. *Molina v. Astrue*, 674 F.3d 1104, 1112–13 (9th Cir. 2012) (an ALJ may consider "whether the claimant engages in daily activities inconsistent with the alleged symptoms"), superseded by regulation on other grounds (identifying two-step analysis

1   in assessing the credibility of a claimant's testimony regarding the subjective pain or intensity of

2   symptoms).  Even where a plaintiff's activities suggest some difficulty functioning, they may be

3   grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally

4   debilitating impairment.  *Id*. at 1113.

5           In assessing Plaintiff's daily activities, the ALJ noted:

6              In terms of the activities of daily living, the claimant has lived alone for

7              years, which infers a level of independence and the ability to care and
               provide for herself, to her credit. In February 2020 she cooked, cleaned,

8              shopped, and performed activities of daily living without assistance. The
               claimant said she walked a lot for exercise and could sit for 45 minutes.

9              There is no objective evidence to indicate a deterioration in functioning.

10             Yet, the claimant's testimony suggested she was significantly more
               limited (e.g., could only stand five to ten minutes, walk fifteen minutes,

11             and sit fifteen to twenty minutes).

12  AR 25.  In support, the ALJ cited a February 2020 evaluation which noted that Plaintiff "currently

13  lives alone with her dog and cat.  She cooks and cleans…  She shops and performs her own activities

14  of daily living without assistance.  She tells me she does a lot of walking for exercise."  AR 368.  The

15  Court therefore finds the ALJ appropriately assessed Plaintiff's demonstrated daily activities in

16  discounting Plaintiff's subjective complaints.

17          Third, the ALJ considered that, prior to Plaintiff's noncompliance with treatment, Plaintiff's

18  diabetes, hyperlipidemia and hypertension were well-controlled with medication.  AR 24.  The ALJ

19  also noted that Plaintiff treated her back pain with ibuprofen and physical therapy and later declined

20  injections and medication for her back pain.  AR 25.  "Impairments that can be controlled effectively

21  with medication are not disabling for the purpose of determining eligibility for SSI benefits."  *Warre v.*

22  *Comm'r*, 439 F.3d 1001, 1006 (9th Cir. 2006) (quoting *Brown v. Barnhart*, 390 F.3d 535, 540 (8th

23  Cir. 2004); *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir. 1987); *Odle v. Heckler*, 707 F.2d 439, 440

24  (9th Cir. 1983)).

25          Here, the ALJ cited the record and found that Plaintiff's diabetes, hyperlipidemia and

26  hypertension were well-controlled with medication.  AR 24; 310-11.  A May 2019 report noted that

27  Plaintiff "has very well-controlled diabetes, hypertension, and dyslipidemia" and that Plaintiff's

28

13

"diabetes is very well controlled, A1c was 7.1, and she is on metformin 500 mg twice a day."  AR 310-11.  The May 2019 report further stated that Plaintiff's "blood pressure is very well controlled, she is only on 5 mg of lisinopril and she is on atorvastatin 10 mg for a cholesterol which looks pretty good except triglycerides are mildly elevated…"  AR 311.  Given the record showing that Plaintiff's diabetes, hyperlipidemia and hypertension were well-controlled, the ALJ appropriately assessed the treatment record in discounting Plaintiff's subjective symptoms.

The ALJ further examined the record regarding treatment of Plaintiff's back pain, noting that Plaintiff initially treated back pain with ibuprofen.  AR 25; 355-358 (October and November 2019 assessments noting Plaintiff had upper back tenderness, back pain, and degenerative disc disease, but would treat with "Ibuprofen as needed").  The ALJ also noted that the record showed Plaintiff's back pain was later largely controlled with physical therapy and Plaintiff declined injections and pain medication.  AR 25; 311; 367-371; 433; 482-484; 485 (85 (March 2021 orthopedic surgeon's report recommending "conservative management of her mid and low back pain, Including encouraging her to continue with her physical therapy, long-term home exercise program, activity lifestyle modifications, and NSAII7s as needed.").  Because the ALJ appropriately assessed the record to determine whether Plaintiff's impairments could be effectively controlled, the ALJ properly used Plaintiff's treatment as a basis to discount Plaintiff's symptom testimony.

Fourth, the ALJ considered that Plaintiff stopped working due to a business-related downsizing rather than because of her allegedly disabling impairments.  AR 24 (Plaintiff "stopped working in 2013, years before the relevant period, for nondisability reasons").  An ALJ may discount a claimant's subjective testimony where the alleged impairment is not the reason that the claimant stopped working.  *See Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (finding testimony that claimant's diabetes was not the reason he stopped working undermined his claims that his diabetes was among his disabling conditions); *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001) (finding ALJ properly discounted allegations of pain where plaintiff reported at the hearing and to at least one doctor that he left the job because he was laid off, not because he was injured.); *Rios v. Barnhart*, 215 F. App'x 681, 684 (9th Cir. 2006) ("In the evaluation of [claimant]'s subjective complaints, consideration of her work record was appropriate."); see also *Clausen v. Comm'r*, No. 1:17-CV-

14

01484-SAB, 2019 WL 498989, at *17 (E.D. Cal. Feb. 8, 2019) ("An ALJ may consider why a claimant left her last place of employment when making a credibility determination."); *Marti Jean K. v. Comm'r*, No. 6:18-CV-00109-HZ, 2019 WL 3061561, at *6 (D. Or. July 10, 2019) (ALJ properly found that evidence in the record "that the claimant stopped working for reasons not related to her allegedly disabling impairments," which "strongly suggests that the claimant stopped working because her boss retired, not because her symptoms were limiting."); *Findley v. Saul*, No. 1:18-CV-00341-BAM, 2019 WL 4072364, at *8 (E.D. Cal. Aug. 29, 2019) (ALJ properly considered that "Plaintiff stopped working due to a business-related downsizing rather than because of allegedly disabling impairments.").

As in *Bruton* and *Findley*, the record demonstrates that Plaintiff stopped working due to a layoff on September 30, 2013, rather than allegedly disabling impairments. AR 40 (Plaintiff testified that in her last position as a nursing assistant, she was laid off); 235 (Plaintiff noted that she stopped working due to being laid off on September 30, 2013). The ALJ therefore permissibly considered the reason Plaintiff stopped working as part of her assessment of Plaintiff's subjective complaints.

The Court therefore concludes that the ALJ did not err in discounting Plaintiff's subjective complaints.

**B.     Plaintiff's New Evidence**

With her Motion for Summary Judgment, Plaintiff also included three physician's reports: (1) a Physician's Report from Ruth A. Taylor, FNP-BC dated November 19, 2019; (2) a Physician's Report from Matthew B. Beare, MD dated November 2, 2020; and (3) a Physician's Report from Matthew Beare, MD dated October 26, 2021. (Doc. 17 at 4-6.) These reports do not appear previously in the administrative record. Defendant contends that the new evidence does not provide a valid basis for reversal, as Plaintiff has not shown neither that the new evidence is material or that Plaintiff had good cause for failing to present the evidence earlier.

The Physician's Report from Ruth A. Taylor, FNP-BC dated November 19, 2019, listed a Diagnosis of "Diabetes, upper back pain" and the Prognosis as "guarded." (Doc. 17 at 4.) Nurse Practitioner Taylor further wrote "Diabetic" next to Recommended Treatment Special Diet. (*Id.*)

1   Nurse Practitioner Taylor checked that Plaintiff was unemployable and listed the length of incapacity

2   as being from November 19, 2019, to November 19, 2020.  (*Id.*)

3          The Physician's Report from Matthew B. Beare, MD, dated November 2, 2020, solely listed a

4   Diagnosis of "chronic low back pain osteoarthritis" and checked that Plaintiff was unemployable from

5   November 2, 2020 to November 2, 2021.  (*Id.* at 5.)

6          The Physician's Report from Matthew Beare, MD, dated October 26, 2021, listed a Diagnosis

7   of "chronic low back pain" and a Prognosis of "guarded."  (*Id.* at 6.)  Dr. Beare also checked that

8   Plaintiff was unemployable from October 6, 2021 to October 6, 2022.  (*Id.*)  Dr. Beare further wrote

9   that recommended treatment consisted of 12 weeks of physical therapy.  (*Id.*)

10         Plaintiff requests that the Court review new evidence that was not submitted during the

11   administrative proceedings.  The submission of new evidence to the trial court is governed by 42

12   U.S.C. § 405(g), which requires the claimant to show that the new evidence is material and there was

13   good cause for the failure to incorporate the evidence into the record in the prior proceeding.  *Booz v.*

14   *Sec'y of Health & Human Servs.*, 734 F.2d 1378, 1380 (9th Cir. 1984).

15         "To be material under section 405(g), the new evidence must bear 'directly and substantially

16   on the matter in dispute."  *Mayes v. Massanari*, 276 F.3d 453, 462 (9th Cir. 2001) (quoting *Ward v.*

17   *Schweiker*, 686 F.2d 762, 764 (9th Cir. 1982)).  Further, new evidence requires remand "only where

18   there is a reasonable possibility that the new evidence would have changed the outcome of the

19   Secretary's determination had it been before him."  *Booz*, 734 F.2d at 1380 (quoting *Dorsey v.*

20   *Heckler*, 702 F.2d 597, 604–605 (5th Cir. 1983)).  Good cause is established where the material was

21   unavailable earlier.  *Mayes*, 276 F.3d at 463.

22         First, Plaintiff has not established good cause for her failure to submit this evidence during the

23   administrative proceedings.  "A claimant does not meet the good cause requirement by merely

24   obtaining a more favorable report once his or her claim has been denied.  To demonstrate good cause,

25   the claimant must demonstrate that the new evidence was unavailable earlier."  *Mayes*, 276 F.3d at

26   463.  A claimant must also demonstrate good cause for failing to seek the expert's opinion earlier.  *Id.*

27         Here, Plaintiff fails to explain why she did not seek or could not have obtained this evidence

28   earlier.  (*See* Doc. 17.)  Plaintiff does not address whether there is good cause for the failure to present

16

the new evidence in the administrative proceedings.  (*Id.*)  Nurse Practitioner Taylor's November 19, 2019 Physician's Report and Dr. Beare's November 2, 2020 Physician's Report were written prior to the 2021 ALJ proceedings.  And while Dr. Beare's October 26, 2021 Physician's Report was written subsequent to the ALJ's decision, Plaintiff does not explain why she did not seek Dr. Beare's opinion earlier.  Moreover, while Dr. Beare's October 26, 2021 report may list a more favorable opinion of "unemployable," the diagnosis of chronic low back pain and recommended treatment of physical therapy does not substantively differ from the medical evidence discussed by the ALJ, suggesting that the evidence may have been available earlier and was already discussed by the ALJ.  (Doc. 17 at 6.) Accordingly, Plaintiff has not shown there is good cause for her failure to submit this evidence during the administrative proceedings.

Second, it is unlikely that these reports would meet the materiality standard.  Plaintiff's diabetes and back pain were already addressed by the ALJ in her opinion, and these opinions add no new information regarding those ailments beyond the already-discussed diagnoses, prognoses, and treatment options.  Additionally, the opinions in the reports that Plaintiff was unemployable are considered evidence that is "neither valuable nor persuasive," so the ALJ would not be required to "provide any analysis about how we considered such evidence in our determination or decision."  *See* 20 C.F.R. § 404.1520b(c); 20 C.F.R. § 416.920b(c).  Furthermore, Dr. Beare's October 26, 2021 Physician's findings and opinion that Plaintiff was unemployable from October 6, 2021 to October 6, 2022 occurred after the ALJ's decision, which found Plaintiff was not disabled "from April 1, 2017, through the date of this decision [May 28, 2021]" and therefore do not undermine the ALJ's determination.  AR 29-30.  Accordingly, these newly submitted reports do not meet the materiality standard.

Given that Plaintiff has not established good cause for her failure to submit this evidence during the administrative proceedings and the evidence does not meet the materiality standard, Plaintiff has not met her burden and the Court declines to consider this new evidence.

///

///

///

17

**CONCLUSION AND ORDER**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards.  Accordingly, IT IS HEREBY RECOMMENDED as follows:

1.    Plaintiff's appeal from the administrative decision of the Commissioner of Social Security be denied; and

2.    The Clerk of this Court be directed to enter judgment in favor of Defendant Martin O'Malley, Commissioner of Social Security, and against Plaintiff Mary Lynn Gallegos.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, as required by 28 U.S.C. § 636(b)(l).  Within fourteen (14) days after being served with these findings and recommendations, the parties may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that the failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **February 5, 2024**          /s/ *Barbara A. McAuliffe*
                                    UNITED STATES MAGISTRATE JUDGE